UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| D.S., Petitioner, v. JULIO HERNANDEZ et al., Respondents. | CASE NO. 2:26-cv-02308-JNW<br>ORDER DENYING HABEAS PETITION |

This matter comes before the Court on Petitioner D.S.'s amended petition for a writ of habeas corpus. [1] Dkt. No. 17. Having considered the amended petition, the return, and the traverse, the Court DENIES the petition for the reasons stated below.

## 1. BACKGROUND

D.S. is detained at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. The Court refers to the background section of its order in *D.S.*

[1] Pursuant to this Court's order, Dkt. No. 16, D.S. filed an amended petition naming the proper respondent, the warden of the Northwest ICE Processing Center, which is the facility where D.S. is detained. Respondents were permitted to, but did not, file an amended return.

*v. Hernandez et al,* No. 2:26-cv-01328-JNW, 2026 WL 1408517, at *1 (W.D. Wash. May 20, 2026) ("*D.S. I*"). The Court granted that petition on May 20, 2026, and Immigration and Customs Enforcement (ICE) released D.S. the same day on an Order of Supervision ("OSUP"). The order also set conditions on any future re-detention:

> Respondents may not re-detain Petitioner without providing written notice of the basis for proposed re-detention in advance and a meaningful opportunity to respond, except as authorized under 8 C.F.R. § 241.13(i)(1)–(2). The mere passage of time, the resubmission of a travel document request, or the anticipation that Laos may reissue a travel document does not, without more, constitute changed circumstances warranting re-detention.

*Id.* at *5.

In late May 2026, Enforcement and Removal Operations ("ERO") obtained a new travel document for D.S. to travel to Laos—a "Laissez-Passer," which allows a single entry and expires 90 days after issuance. Dkt. No. 14-1. By D.S.'s reckoning, the document expired on August 21, 2026. *Id.*

On May 26, 2026, ICE issued a "call in letter" asking D.S. to appear for a mandatory appointment on June 24, 2026. The letter told D.S. that "an updated travel document has been obtained" and that he should be "prepared to provide a written explanation regarding the potential revocation of your Order of Supervision." Dkt. No. 14-3 at 2.

D.S. appeared on June 24. ICE interviewed him, he gave a written response, and ICE then revoked his OSUP and took him into custody. Dkt. No. 12 at 5; Dkt. No. 13 ¶¶ 9–10; Dkt. Nos. 14-4, 14-5. That same day, D.S. filed this habeas petition in the District of Oregon, the district where ICE first detained him before

transporting him to NWIPC. Dkt. Nos. 1, 2, 7. The Honorable Judge Karin J. Immergut granted D.S.'s unopposed motion to transfer the case to this district. Dkt. No. 9.

On July 3, 2026, D.S. filed a petition for review and a motion to stay his removal with the Ninth Circuit. The Ninth Circuit received the petition and issued a temporary stay of removal on July 6, 2026. *D.S. v. Blanche*, No. 26-4248, Dkt. No. 5 (9th Cir). While that stay is in effect, Respondents do not intend to remove D.S. Dkt. No. 13 ¶ 15; Dkt. No. 12 at 5.

## 2. LEGAL STANDARD

Federal courts may grant writs of habeas corpus to any person held "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody," and thus to warrant relief, a petitioner must show that his detention is unlawful. *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973); *see Lambert v. Blodgett*, 393 F.3d 943, 969 n.16 (9th Cir. 2004) ("In state collateral litigation, as well as federal habeas proceedings, it is the petitioner who bears the burden of proving his case."); *see also Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004) ("petitioner carries the burden of proving by a preponderance of the evidence that he is entitled to habeas relief" when challenging incarceration by the state under 28 U.S.C. § 2254). A district court's habeas jurisdiction extends to challenges to immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *Demore v. Kim*, 538 U.S. 510, 517 (2003).

## 3. DISCUSSION

### 3.1 D.S. may proceed under pseudonym.

D.S.'s unopposed motion to proceed under pseudonym is permitted. There is no prejudice to Respondents as D.S. has disclosed his identity to them and the prejudice to the public is limited. Thus, the Court finds D.S.'s need for anonymity outweighs prejudice to the opposing party and the public's interest in knowing the party's identity. *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1068 (9th Cir. 2000).

### 3.2 Respondents complied with *D.S.* when they re-detained D.S.

D.S. pleads one claim: that ICE re-detained him without the notice and opportunity to respond *D.S. I* required, and that his detention is unlawful as a result. Dkt. No. 17 ¶¶ 23–26. That claim fails on this record.

*D.S. I* required two things before re-detention—written notice of the basis, given in advance, and a meaningful opportunity to respond. Respondents gave both. The May 26 letter told D.S. why he was being called in, told him ICE had obtained an updated travel document, and told him to come prepared to explain in writing why his OSUP shouldn't be revoked. Dkt. No. 14-3 at 2. That is notice of the basis, delivered a month ahead. When D.S. appeared on June 24, ICE interviewed him and took his written response before revoking his OSUP. Dkt. No. 12 at 5; Dkt. No. 13 ¶¶ 9–10. That is an opportunity to respond, and it came before the deprivation, which is what *D.S. I* called for.

D.S.'s answer is that he never received the letter. Dkt. No. 17 ¶ 24. But D.S. bears the burden here, *Preiser*, 411 U.S. at 484, and the showing does not carry it. The amended petition is unverified, and the supporting declaration comes from counsel, who has no personal knowledge of what reached his client's mailbox. Dkt. No. 5 ¶ 4. Against that, Respondents submit a sworn declaration that ICE mailed the letter, along with the letter itself. Dkt. No. 13 ¶ 7; Dkt. No. 14-3. And D.S. appeared at the June 24 appointment—an appointment the letter alone scheduled. On this record the Court can't find that the notice never arrived.

*D.S. I* also permitted re-detention "as authorized under 8 C.F.R. § 241.13(i)(1)–(2)," which allows revocation when ICE determines that removal is significantly likely in the reasonably foreseeable future. 2026 WL 1408517, at *5. *D.S. I* turned on the absence of a travel document; the Court found that Respondents had "only ... anticipation" that Laos would issue one. *Id.* at *3. That changed. By June 24 Laos had issued the document, and within a week ICE had a seat on a July 28 charter flight. Dkt. No. 14-1; Dkt. No. 13 ¶ 12. Whatever else may be said of that showing, it is more than the anticipation *D.S. I* found wanting.

### 3.3 D.S. hasn't shown that his detention is unlawful under *Zadvydas*.

D.S. separately argues that his detention has become unconstitutionally prolonged under *Zadvydas*, which holds that 8 U.S.C. § 1231(a)(6) "does not permit indefinite detention." 533 U.S. at 689. Respondents answer that *Zadvydas* no longer applies because D.S. obtained a stay of removal, so his detention authority has

shifted to 8 U.S.C. § 1226(c). Dkt. No. 12 at 2. The Court need not resolve that question, because D.S.'s claim fails even if *Zadvydas* governs.

Under *Zadvydas*, D.S. must first give "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future"; only then does the burden shift to the Government. 533 U.S. at 701. D.S. has not made that showing. He concedes Respondents hold a travel document. Dkt. No. 15 at 5. Laos has issued one twice in five months. And ICE had a seat on a July 28 charter flight. Dkt. No. 13 ¶ 12. The reason that flight didn't leave is the stay D.S. asked the Ninth Circuit to enter. A petition for review and the stay that comes with it do not, without more, make detention indefinite. *See Prieto-Romero v. Clark*, 534 F.3d 1053, 1063 (9th Cir. 2008).

D.S. also asks the Court to count his days in custody, but his own figures don't agree with each other—the traverse gives 146 and 125 days for the same 2003–04 interval, and totals of 183, 150, and 187 days. Dkt. No. 15 at 1–3, 5. The Court doesn't rely on any of them.

### 3.4 The denial is without prejudice.

A word about what this order does not decide. Respondents justified the June 24 revocation by pointing to a travel document and a scheduled removal. The removal did not happen. The travel document was valid for 90 days from issuance in late May, and D.S. remains detained. If that document has lapsed without D.S.'s removal, then his circumstances are not what they were on June 24, and this order

does not foreclose a new petition saying so. Nothing here disturbs the conditions *D.S. I* placed on his re-detention.

## 4. CONCLUSION

The Court DENIES D.S.'s amended petition for a writ of habeas corpus WITHOUT PREJUDICE. Dkt. No. 17. The conditions imposed in *D.S. I* remain in effect.

Dated this _25_ day of August, 2026.

Jamal N. Whitehead
United States District Judge